May it please the court. I am Jim Martin and represent both Dr. Fahn and his company, Midwest Neurosurgeons. At council table with me is Sandy Boxerman, who represents Deborah Seeger and her company, DS Medical. The issues are the same for all the defendants. Each count involved in the complaint that originated this lawsuit involves the same legal basis. It's allegations of violations of the False Claims Act based on alleged violations of the anti-kickback statute. For every one of the issues, we are asking the same thing of the court. That the court simply apply the ordinary meaning to the words of the statutes that are involved and the words of the specific instructions that are issued in the case. I think it's unclear whether that's an instruction argument or a sufficiency argument. In which aspect, your honor? Where was there a plain meaning error in the district court? In the instructions or in ruling that the evidence was sufficient? Judge, we would submit in both. All right, so let's take the instruction first. Okay. I assume the district court instructed the statutory language results from. It did. But your honor, what it also did, in addition to adding results from, it also told the jury. We submit incorrectly. That it is enough for the United States to show that the claim failed to disclose an anti-kickback statute violation. Without any mention of causation, let alone but for causation. Did it say that? The claim? You mean the claim didn't say this is the result of a kickback? That was the instruction requested? The quote was, it is enough for the United States to show that the claim failed to disclose the anti-kickback statute violation. And it made no mention of, as we requested, the definition of resulting from with a but for causation. When you submitted it to the judge, the request of jury instruction, did you cite the Barrage case? Had that been decided and did you cite it as precedent? It was. This was going on, started with the court, really in 2017 and Barrage was 2014. So we had cited Barrage in motions pre-trial, motions during the trial, and motions post-trial. Is there any circuit court authority other than the medical case on this question? Other than the 3rd Circuit? No, other than the 3rd Circuit, there are no other court of appeals opinions. And we are certainly advocating that the 3rd Circuit simply got it wrong. And I'm happy to address that if the court would want. It's up to you. Okay. Well, Greenfield, out of the 3rd Circuit, if you actually looked at the briefing in that case, the issue of results from and its definition was not thoroughly briefed to begin with. The defendant's brief mentioned Barrage once. The government's amicus brief never mentioned Barrage at all. Well, we don't care about that. We're not going to sit and go study their briefs and decide that the case is distinguishable because the lawyers didn't do it right. No, Your Honor, I'm not arguing that's why it's distinguishable. What I'm pointing out is part of the reason I believe they got it wrong was because the parties did not fully analyze it. Does your proposed instruction include the words, but for? They do. In what case has ever said that's a mandatory instruction after Barrage? Well. I think it's inherently confusing to a jury. To go back centuries of causation jurisprudence and say that has to be included in an instruction to a lay jury. Well, I think the difficult. First of all, to answer your question as to case law, we cite in our brief United States versus McKay, which is a Tenth Circuit case in the concurrent opinion by then Judge Gorsuch. He specifically said that the phrase resulting from needed definition because otherwise the jury would be confused. Yes, that's fine. But it requires but for. He was specifically addressing the issue of whether. Yes, but the language is critical. All we require are instructions that fairly apprise the jury of the requisite substance. And your brief sounds like it's reversible error if you don't put the words but for in your instruction. The Supreme Court has specifically said that resulting from that. What Congress in the traditional background principle interprets resulting from to mean but for causation. That's lawyer talk. It is lawyer. That's not jury talk. I agree. It is lawyer talk. And it's congressional talk. And that's why the jury needs to understand what resulting from means. Because the government stood before them. Let me put it a little bit differently. If the court instructs from the plain language, uses the language of the statute. And the evidence shows that every claim at issue. Included a request for reimbursement of services or materials supplied by a vendor. As a result of vendors kickback, a KS violation. There's no reversible error. Is there? If the jury was not given the instruction to understand what resulting from meant. I submit there is reversible error. Because the jury. We have no authority for that. I mean if the jury hears results from. And the evidence shows that the claim that was submitted. Regardless of whether the hospital or the doctor submitted it. But the claim included a request for reimbursement of services. And that request was included because of an AKS violation. Enough proof. Particularly in a civil Medicare fraud recovery damage act. Number one. That's not the facts in this case. Number two. Now let's get to claims that weren't the result. Claims for services that didn't flow from a vendors AKS violation. Well what I also want to point out though. Is that. Even if one could argue. Which the position you're taking. Is that. If you use the words of the statute. That's sufficient. The problem is. The district court in its instructions went farther than that. By telling the jury. Under its definition of false or fraudulent. That it was enough for the United States to show that the claim failed to disclose the anti-kickback violation. It took out the concept of causation. Inherent in that is my results from. Analysis. The disclosure is an add on. To the cause. The claim was. That portion of the claim. Not the claim in its entirety. But that portion of the claim. Resulted from. The AKS violation. That's what the vendor. That was the quid pro quo. For the kickback. I would submit that the but for issue. Is a question of. Would the same services. With the same. Services and. Claims be made. If there was no kickback. Well, the same. You mean the same vendor or the same service. Same vendor. Same services. No, just they're quite different. Well, I say the same services. That's irrelevant. Same vendor. Yes, that's that. That is. What the AKS violation caused. Well, that that's. I was interpreting your. Your argument. In that was hoping that we would go to. To the same claim analysis. Analysis. Same services. Analysis. Skip over the same vendor. Aspect. Well, our position is. The government must show. That either the same vendor. Or the same services. Would not have been provided. If the same vendor. So. So either or. The government shows either that's sufficient. Either or. As a result of the kickback. If. As a result. The result is the quid pro quo. It's implicit in the kickback. The jury is entitled to infer that I think. The. What I am saying is. The government did not put on evidence. To show. That either the vendor. Or the services. Would have been different. And then. The government. And then the court. Did not provide the jury. What kind of evidence are you looking for? I mean the claim. Claim submitted by whoever submitted it. Including a request for Medicare reimbursement. Of services. Provided by a vendor. Who got it. Who got there because of the kickback. Well. What more does the government need to show? I think they need to show that the doctor. Would have used a different vendor. If this vendor hadn't offered a kickback. Would pricing evidence do it? And what I mean by that is. If they used a vendor that had a higher price. For whatever good or service it was. And. Therefore the kickback. Lowered the cost to the doctor. Below what another vendor would have. Would have. Priced. Would that have been the type of evidence you're looking for? In other words. Selling a stent for $100. Another vendor. Sells it for $85. But there's a $50 kickback. With $100 one. Presumably the doctor. Would have gone with the $85 one. Had there been no kickback. Well. The evidence in this particular case. Was the government witnesses. Testified. That. There was one government witness. That went from. Engaged in three different vendors. And Dr. Fon. Traveled with this. Vendor. And each time the vendor said. I was offering better products. When I moved from company A to company B. I had better products to offer. When I moved from company B to company C. I had better products to offer. Well that's his claim. I mean I understand that. I'm just trying to figure out. I'm trying to answer the question that Judge Loken was asking. Which is what kind of evidence would the government need to show. To show that. It was a result of the violation. So. The evidence would need to. Would be required to establish. That the doctor. Would have. Utilized a different vendor. Or provided different services. And. Inferentially. And of course can't call. Well I guess they can call the doctor. In this case. And they did. And they did. Right. The doctor. Was called. And testified for the better part of a. Half a day. I have a question. A preliminary question. Oh. I think Judge Arnold. Did you want to. Oh I'm sorry. Thank you very much. I was wondering. Is it. Would it be possible. To interpret the words. Resulting from. To mean something like. That includes. Or that involves. To get around this difficulty. Judge. I have not seen any cases. That interprets. It that way. And I think what's important. Particularly when you're talking about. The anti-kickback statute. When this. Subsection is found under a. Criminal penalty provision. Is that. You go to the ordinary meaning. Of the words. And the ordinary meaning. Is set out in Burridge. As meaning. Imposing but for causation. One of the difficulties. I saw in the medical case. Was that it. Did really confront. Your argument. Depressly. It. Talked about. The unlikely. Of this. This phrase. Meaning what. The defendant. Wanted it to mean. And the. Historical context. In which the amendment. Was made. And. The apparent. Difficulty that. It was. The statute. The amended statute. Was. Intended to be. But there was no real. No real. Interest. With the argument that you're making. So I'm wondering. Perhaps someone might say. Well it really means. Any problems. Or that includes. Something like that. Well the government's. Argued it means. Tainted by. But there's. There's no. Case law. To support that. There is no. Now you. You're. Answer to Judge Arnold. Suggested that there are. Hopefully published. District court opinions. Addressing the instruction. Question. Post purge. You said. Cases suggest. I mean. And. You were discussing instructions. What. No the cases. I was talking about. When he asked. Whether. We were talking about instructions. Are there district court. Cases. Addressing. This instruction. Question. Post purge. There are. Some. And. In your brief. No. Are they published. There are published. Opinions. Since purge. That actually most. Not. Don't address. Specifically. The. Anti-kickback statute. Subsection. But address. Resulting from. Within the context. Of the. Statute that was involved. In purge. The. And the death. Results. Right. Give us a citation. And supplemented. With a 28. J. Of the. District court. Case. That you find. Most. Most consistent. With your position. On the instruction. Question. I will. Thank you. Well. I wanted to. So. The question I want to ask. Is actually. Sort of a predicate. To everything else. Which is. I'm a little concerned. About jurisdiction. Here. Which is. The case came up to us. And then. There was the dismissal. Without prejudice. Of the other two. Counts. I don't know why they weren't. Tried together. And it doesn't really matter. But. My question for you. Is. Is the case really final? If. No matter what we decide. The. The government can reinstitute the. The counts that were dismissed. Because it was without prejudice. So. Do we have jurisdiction? Well. I'm confident that you do have jurisdiction. And. In fact. As you may recall. From the procedural issues. There was a lot of hoops. Jumped through. To ensure. That. There was jurisdiction. And I think. The. The counts. Whether dismissed. With or without prejudice. Is. They no longer exist. They're no longer part of the case. And they would have to be brought up. In a separate lawsuit. And therefore. The court does have jurisdiction. Because it is a final order. So. They can't. There's no provision for them reinstituting it. In the same lawsuit. If we were to send this back down. The. The government couldn't reinstitute those. Those.  In this particular. They could not. They could not. They have been dismissed. I'm. Beyond my. Time. Except for. For. For. For. Rebuttal. Unless you have another question. I'll sit down. And save a few minutes. Very good. Thank you. Mr. Winnick. Good morning, your honor.  Daniel Winnick. For the government. Courts have long held well before the 2010 statutory amendment on which defendants rely. That a claim for goods or services provided in violation of the anti-kickback statute is false or fraudulent within the meaning of the False Claims Act. And that reflects the basic principle that what the government contracts for is the provision of conflict free care. And if the care that's provided is not conflict free. Then the government hasn't gotten what it bargained for. Even if the same goods or services might have been provided by a conflict free provider. The defendant's argument rests entirely on the proposition that that line of precedent was silently overruled by the 2010 amendment to the statute. But every court to consider that argument, including several post Burrage, has rejected it. And for good reason. What the text of the amendment says is that a claim that includes items or services resulting from a provision of the AKS is a false or fraudulent claim for purposes of the FCA. And defendants say resulting from must mean but for causation. But that's not what Burrage says. Or what Paroline says. What Burrage says is that resulting from refers to actual causation. Which is to say factual causation. And it goes on to say that but for causation is the default standard of factual causation. It applies where there is no textual or contextual basis for believing otherwise. Counsel before we start questioning you on that, I just want to ask the jurisdiction question. Do you agree with opposing counsel on how he describes the jurisdiction in this case? So we agree, your honor, that there's jurisdiction. We don't agree that the claims couldn't be reinstated in this case. They were dismissed without prejudice. And on the explicit basis, as I recall, that if this court were to, you know, disturb the False Claims Act liability, then the other claims could go forward. But I don't think that destroys this court's jurisdiction. It's a final judgment because the district court has fully disposed of all the claims. The other claims didn't need to be adjudicated. Counsel, are you familiar with our cases that have taken a very dim view of dismissals without prejudice to create false appellate jurisdiction? Your honor, I don't. I just don't know what the district court could have done with these claims other than what it did. You didn't answer my question. Are you familiar with our case law? Your prior answer was inconsistent with it. I'm familiar with the proposition that you can't manufacture appellate jurisdiction with false finality. I don't think what we have here is false finality. Well, if you can reinstate because it was a dismissal without prejudice, that's precisely what our case law has warned parties not to do. Your honor, I think the dismissal of the claims reflected the proposition that they were sort of alternates to the False Claims Act liability. And so if there's False Claims Act liability, there's no basis for the other claims. Well, but here's the thing. And the reason why our cases take a dim view of this is because presumably, even though the trial was bifurcated, the United States could have tried these other claims before bringing it on appeal. There's no reason to hop up on appeal, have us decide a question, and then say, oh, we got to back up. That doesn't sound much like finality to me. So the other claims were equitable claims, so they were not put to the jury, and there was no need for the district court to resolve them in light of the outcome of the trial, which is why they were disposed of as they were? Just feels a little like manufactured jurisdiction, to be honest with you. I mean, if you can't bring them in this particular lawsuit, as opposing counsel said, that's one thing. But if you can, no matter what we decide, could go back and bring those claims as well, it feels to me like this does not end the litigation on the merits. Because presumably, the United States, regardless, I know you're viewing it as a backup, but regardless of what we decide, the United States could presumably go in and try those cases tomorrow. Now, there might be a question of mootness, that the government got everything that it already, that it was seeking in the first set of lawsuits, but it still feels a little bit like you're manufacturing jurisdiction here. I guess, Your Honor, I don't see it that way, only because I... See what lawyers don't understand is district judges are your allies in this manufactured jurisdiction more often than not. So just because you convinced a very bright and competent district judge to go along with this maneuver, you still have a lot of trouble on a pete with us. I understand the concern, Your Honor, and I think I may be at the limit of what I'm positioned to say about it today, and if the court would like, we're happy to submit something supplemental on it. I understand the concern. We'll work through it. Thank you, Your Honor. So on the factual causation issue, as I noted, what the Supreme Court said in Burrage is meant by resulting from, just as a textual matter, is factual causation, but factual causation doesn't have to mean but-for causation. There are plenty of circumstances where it doesn't. Paroline decided later the same term was one of them, and this is one of them. There's no reason to believe that Congress legislating against the backdrop of the long line of precedent I mentioned intended sub saliencio to overrule it and to require the service would not have been provided but for the AKS violation, and requiring that would run counter to the entire premise of the anti-kickback statute, which is that where a provider is accepting kickbacks or is soliciting kickbacks, you just can't trust that what the provider is doing is medically required or that the provider is providing the medically appropriate care. Why isn't there but-for causation proved if the vendor would not have been included but for the kickback? But-for causation certainly would be proven in that circumstance, Your Honor. Could you prove that or not? So I think we certainly submitted evidence from which the jury could have inferred it, but that sort of proof isn't required. What was that evidence? I mean, so to cite a few pieces, for example, Your Honor, one is that there was an episode discussed prominently in the trial where Dr. Fon's fiance had a dispute with a manufacturer and vendor called VertiCor. The dispute ended badly, and Dr. Fon immediately stopped using VertiCor products and switched to- Let me ask it the different way. Were there any claims for which the false claims liability was held where there wasn't reimbursement of services by a kickback vendor? So the jury found that all of the claims put to it were rendered false by the defendant's noncompliance with the anti-kickback statute. There was not necessarily proof for every claim that that particular good or service would not have been provided but for the anti-kickback statute violation. Again, I think there's certainly evidence from which the jury could have inferred that from Dr. Fon's overall pattern of conduct that he wouldn't have done these things but for the anti-kickback statute violation. I'll tell you what concerns me about this case. It's not so much that the jury wasn't instructed on but-for causation. I think that Judge Logan has a point when he says that maybe resulting from is good enough. But then you go, and I pulled up the instructions here. It talks about at the end of this long paragraph, the United States need not show that any claim expressly represented that it complied with the anti-kickback statute. And then it goes on to say it's enough to show that there's a failure to disclose. It almost instructs the jury that it's close to strict liability if there's an anti-kickback statute violation. And that concerns me when there is a resulting, even if you use the word resulting from, when there is a causal requirement. I think everybody agrees there's a causal requirement in that statute. We just disagree about what it actually requires. So I think there's a couple of questions there, Your Honor, and let me try to answer them. The first is whether this is strict liability. It's absolutely not. Both the anti-kickback statute violation and the False Claims Act violation require CNR. The second is whether there's a causal linkage. Yes, there is a causal linkage. But what that causal linkage is, is illustrated by Greenfield, the Third Circuit case. So there, the defendants provided payments to a charity that referred patients to them. It was a specialty pharmacy. And the Court of Appeals said that there was no causation as to the 24 claims at issue in that case because there was no showing that those patients were exposed to the kickback, that they had come, that they even knew about the referral being provided by this charity as to which the pharmacy had made donations. That's not at all the case here. All of these patients were exposed to the care being provided by Dr. Fahn when defendants were violating the anti-kickback statute. So there's no causal problem of the sort that there was in the Third Circuit. Now, the government was not required to show, and it's quite important that the government is not required to show in these cases, that the particular care that's provided would not have been provided but for the anti-kickback statute. Well, let me ask you this. I'm going to ask this a slightly different way. The government's theory is that the anti-kickback statute taints the transaction. And I don't know how taint is equivalent to any form of causation of which I'm aware, whether it's proximate cause, but-for cause, or any other type of cause. I just think, and you proceeded on a taint theory the whole trial. So I just can't figure out how that's causation. Let me explain, Your Honor. So there is a recognized, there are multiple recognized forms of factual causation other than but-for causation. Two of them were discussed in both Burrage and Paroline are multiple concurrent causation and contributory causation. So in multiple concurrent causation, you have multiple causes, either of which is independently sufficient to produce an outcome, both of which converge to produce the outcome. The classic example being two fires that converge and burn down a building. Neither of them is the but-for cause, but both of them are understood as causes. In fact, another is contributing- Right, and that arises out of proximate cause. And you're right, but I don't know that you proved that either. By saying that it's a taint, again, and strict liability was the wrong thing to use here. But you're not showing that one thing, the anti-kickback statute violation, led to another thing. Well, let me just explain the other type. So contributory causation, none of multiple causes is independently sufficient to produce an outcome, and none of them is necessary to produce the outcome, but all are understood as the cause. So a classic example, a car is at the edge of a cliff. Three people put a hand on it. One wouldn't be enough to put the car over. Two would. Right? The third, each hand in that situation is neither necessary nor sufficient to produce an outcome. None of them is the but-for cause, but all of them is a cause. And we think that's akin to what Congress was thinking here. When a doctor is taking kickbacks, when a doctor is violating the anti-kickback statute, who knows if that is the thing that put the doctor over the top to provide a particular good or service. Maybe it actually was medically necessary. Maybe he would have chosen that particular vendor even in the absence of the kickback. Well, that's the problem. Right there is what you identified as the problem with this. And it goes back to the example I was giving earlier. Heart stent, $100 versus $75. If a $75 heart stent, which you would have gone to anyways, provides a kickback, then I'm not sure that we can exclude that possibility here. But that's essentially, Your Honor, what Congress has said. So the whole point of the anti-kickback statute is that, again, what the government is paying for is conflict-free care. Where the doctor is taking kickbacks, you cannot trust anything the doctor does. And so you understand those claims to be false. And Congress, the courts understood them to be false even before the statute codified it. And Congress codified that they're false precisely because where the doctor is taking kickbacks, the government isn't getting what it bargained for. And that's true even if the same goods or services might have been. Well, let me ask. I'm going to just end this in terms of my line of questioning. But why not proceed on one of the other theories that have been recognized in the case law? We've had a lot of discussion about case law here. There's an express certification theory, and I understand you didn't have the evidence for that, saying, I expressly say that we did not violate the anti-kickback statute and then violated it. But there's an implied certification theory that you could have conceivably proceeded on, which is, at the beginning, the doctor said, I'm going to follow the anti-kickback statute. And by failing to disclose that he was taking kickbacks, he essentially made a false statement because he had already impliedly certified that he was going to comply. Why not proceed on that theory? Why proceed on the basis of a statute that seems to imply a causation requirement? Your Honor, with respect, I think what the statute was simply doing was codifying the certification theory the courts had recognized before. The statute, you have to remember, was enacted before the Supreme Court. And Escobar shored up the implied false certification theory, which had been disputed before. I think certification theories remain viable. But what we have here is a statute that explicitly states this. I think the government doesn't have to go further than that. And I would just, again, this is not a situation where Congress can reasonably be thought to have disturbed the long line of precedent against which it was legislating. And if the court, I understand resulting from means some form of causation. But I don't think it is terribly difficult here to understand that as requiring factual causation in a manner that's entirely consistent with the instruction and with the argument where maybe it's just not. I have one last question, which is, if we disagree with your interpretation of the statute, I'm going to ask opposing counsel this too, could we still affirm on the implied certification theory if we hold that the implied certification theory lives on and that the government's interpretation is not right, that there's no causation requirement here? Or was it not litigated on that basis? So, you know, I think if the 2010 statute didn't exist, the cases preceding the 2010 statute would remain viable. So cases like, you know, Wilkins in the Third Circuit and Ed McNutt in the Eleventh Circuit. It's very hard to follow you with the mask on and when you drop your volume. I'm sorry, I'll keep it up, Your Honor. So those cases remain viable. They weren't overruled by the statute. And so I think if the court were to regard the statute as, you know, causing problems by its codification of those statutes, I think the statutes remain viable. The case was not, I would say, tried on that particular theory. And as Your Honor said, there isn't, you know, evidence of particular certifications as to particular claims. But what the pre-2010 cases say is that everyone well understands that compliance with the Medicaid, you know, the record does have, for example, Dr. Fon's provider agreement with CMS, which has that language in it. That's Exhibit 879. So I think the court could affirm, but it's quite important to the government that the court not hold that that statute impliedly overrules, you know, the long line of cases. I think, you know, and I understand there are judges who are wary of looking to legislative history. And this is not a case where we're suggesting that legislative history identifies the meaning of the statute. But if what the court is looking for is reassurance that interpreting the statute, as we suggest, doesn't somehow, you know, deviate from what Congress wanted, the legislative history here provides an unusually clear explanation of what Congress was doing with the resulting from language, which was simply meaning to overrule. It was letting you try it on a tank theory. I don't think we'll get that out of the legislative history, even if we think it should be consulted. Your Honor, what it was meaning to do was overrule a 2008 decision of an Arkansas district court that had held that the prior line of cases holding claims to be false, where the goods or services were provided in violation of the AKS, didn't render the claim false if it was submitted by the person or entity that didn't violate the AKS. So in that case, there were, you know, the doctor violated the AKS, the hospital submitted the claims, the district court said they're not false because the hospital submitted them. It's not often that Congress, particularly in this day and age, takes action to overrule one district court case in a relatively small population state. That's fair enough, Your Honor. But I think Congress's action, you know, again, it couldn't have been clearer what Congress was doing. And I think it was doing that for good reason. It's your interpretation of what you wanted to do. Understood, Your Honor. I think it's for good reason, though, that Congress did that, which is that it's incredibly important to the United States to be able to pursue False Claims Act liability for this sort of malfeasance by providers. And so, you know, Congress was saw fit to shore up the statute precisely to bolster the government's ability to pursue FCA liability for this sort of violation. And that's the basis on which the government pursued this case. Counsel, if we were to accept the defendant's construction of the statute, did you make a submissible case under that construction in a court of law under an instruction of conform to their theory? Yes, Your Honor. So the evidence I cited earlier in response to a question would have given a reasonable jury a sufficient basis to find for us on a but-for theory. And so somebody, in order to answer that question, some court, either this court or the district court, would have to revisit the record, I presume, to decide whether that's true or not. Is that correct? That's right, Your Honor. And we've pointed to various pieces of the evidence on the basis of which the court could find that there was a mistake. Okay. All right. Thank you. Thank you. In addition to the VertiCorps episode, for example, you know, there were several episodes where Dr. Fahn, you know, stopped using products from a particular provider because of how the provider acted. In one case, they declined to hire his fiancée when they tried to get her a job. That was Globus. In another case, his fiancée's company, DS Medical, tried to hire someone. She turned that down the job, and he stopped using that company's products. That was Lifespine. So the record is replete with evidence that he was making the treatment decisions he was Congress envisioned when it enacted the anti-kickback statute and made compliance with the anti-kickback statute a requirement of payment, and for good reason. Unless you have further questions, we'd ask that the judgment be affirmed. Thank you, Your Honor. Mr. Martin. Thank you. The first thing I would point out, Judge Strauss, is in closing, what the government said was, if we establish a violation of the anti-kickback statute, we've established the second element, the falsity element. They did not rely on anything other than this new subsection. That's also clear from the instruction, where instruction seven, second element, the claim was false or fraudulent. That would have been sufficient under the language of any element, except it went on to say the claim was false or fraudulent because it resulted from a violation of the anti-kickback statute. They rested their concept of falsity specifically on subsection G. The government has stood in front of you now and tried to tell you that resulting from must have meant something different than but for. What Justice Scalia says is the traditional backdrop principle. But they have not offered anything that says the statute was ambiguous to begin with. Mr. Winnick just said that he's not relying on legislative history, but their brief is filled with discussion of legislative history. And if you look at the legislative history, what we pointed out in our reply is that the it was claims provided in or with the violation. And then they changed it and added resulting from the violation. Do we have to go as far as you suggest, though? I mean, do we have to actually affirmatively hold that it requires but for causation? Or is there a way to just say it requires causation? Unfortunately, this particular set of instructions didn't require causation at all. And so therefore, it's erroneous. I think that that would be sufficient. There's no doubt about it. Even the cases that the government relies on, Parolin and others say it requires some form of causation. The government did not try to argue any causation. They asked for instructions that required no causation and not only didn't give the language in instruction seven that negated the concept that causation was needed at all. What about the argument that the government makes that there's enough here in the record for causation, even if they litigated it differently? So it's interesting that they say that. And what they point out is three incidences where Dr. Fahn switched vendors because DS Medical was having an inventory dispute. Not because there was a commission dispute. Not because there was a payment dispute. Because there was an inventory dispute. That's got nothing to do with the anti-kickback statute. The other one is global products was because they wouldn't hire Debra Seeger, supposedly. But that was all in 2008, prior to the allegations of false claims. The false claims don't arise until 2009. So switching away from global doesn't establish any anti-kickback issues. The last one was a life spine, this woman, Renshaw, who they claim because she declined an invitation to be hired by DS Medical, Dr. Fahn switched companies. Again, not because there was a dispute over commissions. Not because they wouldn't give a higher commission that was asked for. It had nothing to do with the anti-kickback statute. She said, I don't want to work for DS Medical. And they say that's connected to a switch to another vendor. That's not caused by any alleged anti-kickback violation. Those are the only three pieces of evidence that they point to that have any connection to possible causation and but for causation. And they don't have anything to do with the anti-kickback statute. I know my time's up, unless there's another question. Thank you very much for the attention. Very good, counsel. Thank you. Argument has been helpful. It's an important case. It's been well briefed and argued. And we will take it under advisement.